1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
*For the Northern District of California*

### UNITED STATES  DISTRICT COURT

### Northern District of California

MELANIE RINCON,

                Rincon,

    v.

AMERICAN FEDERATION OF STATE,
COUNTY, AND MUNICIPAL
EMPLOYEES,

           Defendant.

_____/

No.  C 12-4158 MEJ

**ORDER RE: DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT (Docket No. 30)**

### INTRODUCTION

Rincon Melanie Rincon brings this action for damages related to her termination from Defendant American Federation of State, County, and Municipal Employees ("AFSCME") after nearly seven years of employment.  AFSCME now moves for an order granting summary judgment in its favor.  Dkt. No. 30.  Rincon has filed an Opposition (Dkt. No. 39), to which Defendant has filed a Reply (Dkt. No. 42).  The Court finds this matter suitable for disposition without oral argument and hereby VACATES the August 15, 2013 hearing.  Civ. L.R. 7-1(b).  After carefully considering the parties' briefs and the controlling legal authorities, the Court GRANTS AFSCME's Motion for the reasons set forth below.

### BACKGROUND

**A.      AFSCME and the Organizer Position**

AFSCME is a labor organization which represents over 1.6 million public sector employees throughout the United States and Puerto Rico.  Sukal Decl. ¶ 4, Dkt. No. 36.  These public sector employees are organized and represented at the local level by approximately 3,500 local unions and district councils of local unions affiliated with AFSCME.  *Id.*  AFSCME employs Organizers to

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  reach out to unrepresented workers and lead those workers through the process of organizing,

2  becoming AFSCME members, and winning collective bargaining rights.  *Id.* ¶ 5.

3  Rincon was hired by AFSCME on September 7, 2004 as an Organizer with a home base in

4  Santa Rosa, California.  Jt. Stmnt. of Undisputed Facts ("JSUF") ¶ 5, Dkt. No. 38.  The job

5  description for the Organizer position states, among other things, that "[d]riving, travel, temporary

6  assignments and extended work hours are required."  *Id.* ¶ 3.  The written Class Specifications for

7  the Organizer job title list primary responsibilities that include conducting one-on-one organizing

8  through home and work site visits; recruiting volunteer organizers, supporters, and leaders; and

9  guiding their activities on behalf of the union; and developing broad, representative organizing

10  committees of worker-leaders and training and deploying them to move the campaign.  Borton

11  Decl., Exs. A, B; Mot. Ex. 2 (Rincon Depo.) at 83:17-20, 84:9-12; Johnston Decl., Ex. G, Dkt. No.

12  40. Organizers are employees represented by the United Staff Union ("USU") and covered by a

13  collective bargaining agreement.  JSUF ¶ 4.

14  As an Organizer, Rincon was sent out into the community to speak with employees about

15  AFSCME.  *Id.* ¶ 8.  Rincon visited workers at their homes and on job sites, and these visits were

16  often made without any supervisor accompanying her.  *Id.* ¶ 9.  As part of the position, Rincon states

17  that assessing worker interest "was very much a part of what [she] did" to "see if they were

18  interested in helping to build their Union."  Johnston Decl., Ex. NN (Rincon Depo.) at 80:13-14,

19  83:8-9.  Organizers are also expected to develop worker leader committees.  *Id.* at 83:17-20.  Using

20  a scale of 1 to 5 provided by AFSCME, Rincon states that she used her experience to determine

21  where workers fell within this ranking system.  *Id.* at 84:6-23.  Rincon would "listen to what

22  [workers] say" and then "by virtue of what their responses are that you know by your experience of

23  where they fall and people get moved from ratings, you know?  They could start out being anti, and

24  then find out something from somebody else and, you know, move to another rating, or vice versa."

25  *Id.* at 83:17-84:5, 102:3-21.  During her employment at AFSCME, Rincon was assigned to

26  organizing campaigns in California, Missouri, and Kentucky.  JSUF ¶ 6.  At all times during her

27  employment with AFSCME, Rincon was paid on a salary basis of more than $640 per week.  *Id.* ¶ 7.

28

2

**B.      Rincon's Medical Leave History**

During her tenure with AFSCME, Rincon had injuries and illnesses for which AFSCME gave her several short-term and three long-term medical leaves from work.  Rincon states that she suffers from chronic fatigue syndrome, fibromyalgia, recurrent migraine headaches, insomnia, and hypertension.  Compl. ¶ 6.

1.      <u>First Approved Medical Leave - August 7, 2006 through August 27, 2007</u>

Beginning on August 7, 2006, Rincon took an approved leave of absence for medical reasons.  JSUF ¶ 10.  On August 17, 2006, Rincon's medical provider stated that she could return to work that day with the following restrictions: "alternate sitting and standing office work only no driving at work."  *Id.* ¶ 11.  AFSCME notified Rincon that AFSCME viewed that restriction as light duty and that AFSCME could not accommodate light duty for her position.  *Id.* ¶ 12.  On September 8, 2006, Rincon's medical provider stated that she could return to work with the following restrictions: "Alternate sitting and standing. No commercial driving…PM."  *Id.* ¶ 13.  On or about April 6, 2007, Rincon's medical provider stated that she could return to work with the following restrictions: maximum of 8 hours a day, no kneeling, climbing and squatting; limited walking, bending, stooping and twisting; alternate sitting and standing.  *Id.* ¶ 14.  In response, Jim Schmitz and Gary Frank, both AFSCME managers in the Organizing and Field Services Department, stated in emails that AFSCME could not "accommodate those restrictions for organizers."  *Id.* ¶ 15; Borton Decl. ¶ 15, Dkt. No. 32.

On August 2, 2007, after nearly a year of leave, AFSCME sent a letter to Rincon that stated the following:

> On August 8, 2006, you began a leave of absence based on an on-the-job injury and are currently receiving compensation through our workers compensation carrier. This communication is to advise you that AFSCME cannot continue to carry you in an indefinite leave of absence status due to operational needs. As you are aware, AFSCME does not have a light duty program and it is imperative that you are able to perform the essential duties of the job on a fulltime basis without restrictions. Thus, this is notifying you that on or before August 31, 2007, we must receive a written release from your physician certifying that you can return to work and perform the essential duties of your position without restrictions. If your physician is unable to provide such a release, this letter is to advise that separation papers will be processed to terminate your employment effective August 31, 2007.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  JSUF ¶ 16.

2      Rincon returned to work full-time at AFSCME on August 27, 2007. *Id.* ¶ 17. However,

3  from October 22, 2007 through November 5, 2007, Rincon was out on a leave of absence due to a

4  medical issue due to her daughter's illness. *Id.* ¶ 18; Opp. at 6. In connection with that leave,

5  AFSCME advised Rincon: "If you qualify for FMLA leave on an intermittent basis, you must

6  arrange with your supervisor, a schedule that minimizes disruption to AFSCME's operations and

7  satisfies your needs. If necessary, you may be temporarily transferred to another job with equivalent

8  pay and benefits." Johnston Decl, Ex. M. It also advised her "An employee is required to work a

9  minimum of 1,000 hours during the past 12 months to meet eligibility standards set forth by the

10  Act." *Id.*, Ex. N.

11      2.      Second Approved Medical Leave - January 5, 2009 through July 15, 2009

12      Approximately 16 months after her first long-term medical leave, Rincon went out on a

13  second long-term leave of absence, beginning on January 5, 2009. JSUF ¶ 20. AFSCME again

14  advised Rincon of the potential of "FMLA leave on an intermittent or a reduced leave basis."

15  Johnston Decl., Ex. O. The initial note from Rincon's medical provider stated that she was to be

16  released from all work duties. JSUF ¶ 21. Rincon's medical provider subsequently stated that she

17  could return to work as long as she was restricted from activities such as repeatedly lifting or pulling

18  suitcases or binders, or reaching and lifting carts out of vehicles. *Id.* ¶ 22. In response, AFSCME

19  informed Rincon that it could not modify her job duties to accommodate those restrictions and

20  continued to keep her on a medical leave of absence. *Id.* ¶ 23; Johnston Decl., Ex. O.

21      On May 5, 2009, Rincon's medical provider submitted a form indicating that Rincon could

22  return to work as long as her schedule was limited to 6-8 hours per day, 4 days a week until July 5,

23  2009. JSUF ¶ 24. AFSCME informed Rincon that it could not modify her job duties to

24  accommodate those restrictions and continued her on a medical leave of absence. *Id.* ¶ 25. Rincon

25  subsequently returned to work on July 15, 2009. *Id.* ¶ 26.

26      In November 2009, AFSCME received a letter, dated November 5, 2009, from one of

27  Rincon's medical providers, stating that he was recommending Rincon be granted permission to

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

4

travel with a companion dog "to help her manage her health challenges." *Id.* ¶ 27. Rincon brought

her dog with her from time to time while traveling and working. *Id.* ¶ 28.

3.    <u>Third Approved Medical Leave - May 3, 2010 through July 31, 2011</u>

On May 3, 2010, Rincon went out on a third approved long-term medical leave of absence.

*Id.* ¶ 29. Between May 3 and August 3, 2010, Rincon's medical providers submitted 4 different

medical releases. The first release, dated May 6, 2010, released Rincon from work at least until her

next appointment on May 18, 2010. *Id.* ¶ 30. The second release, dated June 9, 2010, again

provided that Rincon was unable to return to work due to a medical condition and that she would

need to remain off work for the next 30 days. *Id.* ¶ 31. The third release, dated June 29, 2010,

stated that her probable date of return to work was "unknown at this time," that her prognosis was

"guarded," and that the probable duration was "undetermined." *Id.* ¶ 32. The fourth release, dated

August 3, 2010, again stated that her prognosis was "guarded," that the probable duration was

"undetermined," and that the probable date of return to work was "unknown at this time." *Id.* ¶ 33.

During this absence, Jim Schmitz, Director of Organizing and Field Services, wrote to

Stephanie Harrison, Director of Human Resources, on May 7, 2010, stating: "Next week I would

like to discuss our options re Melanie Rincon. There seems to be a pattern of using medical leave."

Johnston Decl., Ex. Q; Ex. ¶ (Harrison Depo.) at 11:17-19, 83:8-14. On May 11, 2010, Harrison

wrote to Rincon, advising that she would exhaust all leave as of May 19, and would thereafter be on

"leave-without-pay status." *Id.*, Ex. T. In response, Rincon requested union leave bank benefits on

or about May 14, 2010.[1]  JSUF ¶ 45. In support, she submitted a medical form to Human Resources,

which approved her request on May 20, 2010. *Id.*

_____

[1] The union sick leave bank, which is jointly administered by AFSCME and USU, permits
AFSCME employees to donate unused sick leave to a medically qualifying bargaining unit members
so that the qualifying member can continue to be paid while on medical leave. JSUF ¶ 47. The
USU collective bargaining agreement provides that "[a]pplicants must have a certified medical need
attested by their physician in order to receive donated sick leave." *Id.* ¶ 48. The AFSCME
Employee Handbook states that sick leave sharing, i.e., the sick leave bank, "is designed to support
employees when they have a serious personal illness and have exhausted all of their available
leave." *Id.* ¶ 49. AFSCME's Family Medical Leave Act policy states that "[a]ny paid leave that is
used shall count as a portion of the total weeks of leave available under this policy." *Id.* ¶ 50.

UNITED STATES DISTRICT COURT
For the Northern District of California

On August 27, 2010, AFSCME sent a letter to Rincon that stated, in part, as follows:

> You have been out on medical related leave since May of 2010. You have exhausted your entitlement to leave under the Family Medical Leave Act and currently are on an extended medical leave of absence with approval from your Director. You remain in a paid status with benefits due to your sick leave donations. Your donations may exhaust by the end of September…. You may be eligible to apply for long term disability…. You must contact Crystal Wallace on or before September 30, 2010 to let her know your plans for returning to work. We also will need a full release from your physician prior to your return.

*Id.* ¶ 34.

On September 1, 2010, Rincon's medical provider submitted a medical release, which stated that her prognosis was "guarded," that the probable duration was "undetermined," and that the probable date of return to work was "unknown at this time." *Id.* ¶ 35.

Around this same time, Rincon applied for leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. Rincon Depo. at 142:13-20. In evaluating Rincon's request, Harrison concluded that she suffered from an FMLA-qualifying illness, but determined that Rincon had not worked the requisite 1,250 hours during the preceding year. Harrison Depo. at 99:7-12; Johnston Decl., Ex. W. AFSCME's Human Resources Department uses a 35 hour standard work week (or 7 hour work day) for purposes of tracking leave accrual and usage, as well as calculating an employee's hourly wage. JSUF ¶ 60. This use of a standard 35 hour work week applies to all employees, regardless of whether that employee is an exempt or non-exempt employee under the Fair Labor Standards Act. *Id.* ¶ 61. The Human Resources Department also uses the 35 standard work week for purposes of calculating eligibility for FMLA leave. *Id.* ¶ 62. From September 1, 2009 to September 2010, Harrison determined that Rincon "only worked 1106 hours. We counted all of your sick, vacation and leave of absence days and subtracted those hours from 1820 hours, which is a standard year of work at AFSCME (35 hours per week times 52 weeks)." Johnston Decl., Ex. X; Harrison Depo. at 102:6-11. Rincon claims that she actually worked 1717 hours over 31.6 weeks between September 1, 2009 and August 31, 2010. JSUF ¶ 63.

On October 6, 2010, a union steward filed a grievance of the FMLA denial on Rincon's behalf, contending that Rincon "calculated her work time for the previous year and believes she has

6

UNITED STATES DISTRICT COURT
For the Northern District of California

1   worked in excess of the requisite number of hours." Johnston Decl., Ex. Y.  While the grievance

2   was pending, on October 15, 2010, Rincon's medical provider submitted a medical release that

3   indicated that she could return to her job as of November 1, 2010, if her job duties were restricted to

4   40 hours per week.  JSUF ¶ 36.  The release also indicated that her prognosis was still "guarded" and

5   that the probable duration was "unknown."  Id.  The form also states that Rincon has "Limited

6   Energy (i.e. no longer capable of working 80 hours [a] week)."  Id.

7        On October 25, 2010, AFSCME sent Rincon a letter that stated in part as follows:

8       Your provider also indicated that your prognosis was guarded and that the probable
    duration of your condition is unknown. We do not offer a modified or light duty work
9       schedule for employees returning from an extended medical leave of absence. In
    order for us to approve your return to duty, you must provide medical documentation
10      that you are able to perform the essential duties of your position which includes travel
    and the ability to work extended hours and weekends.

11

12  Id. ¶ 37.  On November 2, 2010, Harrison denied the FMLA grievance, again finding that Rincon

13  had not reached the 1,250 hour threshold needed to be eligible for FMLA leave.  Johnston Decl., Ex.

14  Z.

15       During this same period of time, AFSCME Organizer Enrique Mejia was limited by his

16  physician to an eight-hour workday.  Johnston Decl, Ex. FF.  Although Mejia did not make a formal

17  request through the AFSCME HR Department, his supervisor accommodated Mejia by permitting

18  him to work whatever was required, but to leave if necessary.  Id., Ex. OO (Borton Depo.) at 79:4-

19  80:8.

20       Over four months later, on March 3, 2011, AFSCME sent a letter to Rincon, which provided

21  in part as follows:

22      This is to update you on your leave of absence status with AFSCME. You have been
    out on medical related leave since May of 2010. … As of today, we have yet to
23      receive a full release for you. You have exhausted all of your accrued sick and
    vacation leave. You have also exhausted your entitlement to leave under the Family
24      Medical Leave Act and currently are on an extended medical leave of absence. … In
    order to continue in an approved medical leave of absence status and to receive
25      donations from the sick leave bank, please have your health care provider provide us
    with an update of your medical condition by completing the enclosed medical
26      certification form.

27  JSUF ¶ 38.

28

Rincon states that when she learned from Mejia that he had been allowed to return to work with an eight-hour day restriction, she asked her medical provider to adjust her own restrictions to match his.  Rincon Depo. at 132:19-133:20.  Subsequently, on March 22, 2011, Rincon's medical provider submitted a medical release which stated that her prognosis was "chronic and uncertain" and that the probable duration was "unknown."  It also provided that she could return to work on April 4, 2011, if she was "limited to 8 hour work day."  *Id.* ¶ 39.

On April 1, 2011, AFSCME send a letter to Rincon that provided in part as follows:

> We received the medical form from your health care provider, Dr. Madill via fax on March 23, 2011. … We received a similar assessment of your condition, work restrictions and the probable duration in October, 2010. …  Based on your job skills and experience, the only position AFSCME can offer you if you return to work on April 4 is an Organizer position located in Michigan.  However, based on your continuing medical restriction, you are not able to perform the essential duties of the position including extended work hours, weekend work and travel. We are prepared to offer you an Organizer position in Michigan on or near the April 4 date if we receive a full medical release from your provider without restrictions as to extended work hours, weekend work and travel prior to that date. …  If you cannot provide such a release in the immediate future, we request that you provide more specific information regarding the probable duration of your condition so that we can determine if further extensions of your leave will allow you to return to work and perform the essential functions of the Organizer position.

*Id.* ¶ 40.

On May 31, 2011, AFSCME sent a letter to Rincon that stated in part as follows:

> I am writing to inform you that you are no longer eligible to receive sick leave donations under the applicable provisions of the USU-AFSCME collective bargaining agreement. This action, effective as of today's date, has been taken because your healthcare provider has notified AFSCME that you are capable of working an eight (8) hour day.
>
> AFSCME records show that you have been employed as a professional Organizer since September 7, 2004. You have not worked in any other capacity and we have no record of you applying for, or indicating an interest in, any positions outside of the organizer classifications at any time during your employment with AFSCME. . . .
>
> Two months ago, your healthcare provider notified AFSCME that you were capable of returning to "fulltime" work on April 4, 2011.  However, the provider's notice also included a restriction that was incompatible with performing organizing work stating that your working period must be "limited to 8 hours work day". You have previously been advised that such an  accommodation of this nature is incompatible with organizing work which requires irregular and extended work hours and frequent travel.
>
> AFSCME is not willing to continue you in a paid leave of absence status, based on your health care provider's notification that you are able to work full time. Although the restriction imposed by your health care provider is incompatible with organizing work, there may be other positions within AFSCME that you could perform

8

1    consistent with that restriction. However, as noted above, we have never received any
     indication of your interest in, or qualification for, other types of work.

2        As you are aware, AFSCME is a nationwide employer and our operations require
     workers with many different skills and qualifications. Available job openings are
3    posted on AFSCME's website and AFSCME will consider your application for any
     position that you are qualified to perform.

4        Because you have exhausted all forms of paid leave and because you are no longer
     eligible to receive compensation through the sick leave donation program, you are
5    being placed in an unpaid leave of absence status effective June 1, 2011 for a period
     not to exceed 60 days. If, during this period, your health care provider removes the
6    previously-imposed restriction on your performing work, and no new restrictions are
     imposed, AFSCME will return you to the next available Organizer position. In the
7    alternative, if during this period, you apply and qualify for a position that can be
     performed with the health care provider's restrictions; you will be returned to active
8    duty. However, if your status remains unchanged at the end of this 60 day period,
     your employment status will end, as AFSCME's operational needs preclude us from
9    continuing you in an unpaid leave of absence status for an indefinite period.

10   *Id.* ¶ 41.

11       On July 29, 2011, AFSCME sent Rincon a letter that stated, in part, the following:

12   You have not contacted AFSCME at all since May 31, 2011. We have not received
     either a full release to return to work as an Organizer or any application from you for
13   other available openings. AFSCME cannot continue you in an indefinite leave of
     absence status due to operational needs. Therefore, your employment with AFSCME
14   will terminate effective July 31, 2011.

15   *Id.* ¶ 42.

16       Rincon was on leave from May 3, 2010 to July 31, 2011. *Id.* ¶ 43.  She exhausted her

17   accrued vacation and sick leave on May 19, 2010. *Id.* ¶ 44.  From May 20, 2010 through May 31,

18   2011, Rincon received paid leave through the union sick leave bank. *Id.* ¶ 46.  While receiving sick

19   leave bank benefits, Rincon was asked to provide medical certification of her continuing eligibility

20   for sick leave bank benefits. *Id.* ¶ 51.  AFSCME terminated Rincon's receipt of sick leave bank

21   benefits on May 31, based on her medical provider's March 22 medical release. *Id.* ¶¶ 41, 52.

22       On July 1, 2011, USU filed a step 3 grievance on behalf of "USU members who have

23   donated to sick bank and Melanie Rincon," asserting that by terminating Rincon's sick leave bank

24   benefits, AFSCME had violated the collective bargaining agreement. *Id.* ¶ 53.  Harrison responded

25   on July 13, 2011, denying the grievance "because it was not filed within the time period established

26   in Section 9.01 of the AFSCME/USU Agreement. *Id.* ¶ 54.  USU could have appealed that denial to

27   Step 4 of the grievance process and requested arbitration, but did not do so. *Id.* ¶ 55.

28

9

**C.      Organizer II Position**

In 2010, as part of an unrelated, negotiated grievance settlement between AFSCME and USU, AFSCME created an Organizer II position.  *Id.* ¶ 56.  Under the terms of the agreement, "[A]ny Organizer with at least 5 years satisfactory performance as a Grade 5 Organizer . . . may request promotion to Organizer II.  This request shall be granted provided the applicant has a record of satisfactory performance as an Organizer and has demonstrated a capacity to undertake more difficult organizing assignments."  *Id.* ¶ 57; Borton Decl. ¶¶ 47-48.

Rincon submitted her request for consideration for promotion to Organizer II by e-mail on December 13, 2010.  JSUF ¶ 58.  On January 28, 2011, Gary Frank sent Rincon an email stating that, "[d]ue to the fact that you have been on multiple extended leaves, you have not been able to establish a record of satisfactory performance over the last two years.  As a result, we will not offer you  advancement at this time.  Should you return to work and establish a record of satisfactory performance for one year, you may reapply for the position."  *Id.* ¶ 59.

**D.      Procedural Background**

On April 15, 2011, Rincon filed a charge with the California Department of Fair Employment and Housing, alleging that AFSCME had violated the Americans with Disability Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, by failing to provide her a reasonable accommodation or to engage in the interactive process, and that AFSCME denied her a promotion and retaliated against her for engaging in protected activity.  *Id.* ¶ 64.  Her charge was subsequently transferred to the EEOC's Washington Field Office.  *Id.*  On November 10, 2011, in response to Rincon's request, the EEOC terminated the processing of Rincon's charge and issued a Notice of Right to Sue without having found any misconduct on the part of AFSCME.  *Id.* ¶ 65.

On February 8, 2012, Rincon commenced the present action in Sonoma County Superior Court.  Not. of Rem., Dkt. No. 1.  Counts 1 through 6 allege that AFSCME violated the ADA and the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 *et seq.*, by engaging in disability discrimination (Counts 1 and 2), by failing to provide a reasonable accommodation (Counts 3 and 4), and by failing to engage in the interactive process (Counts 5 and

UNITED STATES DISTRICT COURT
For the Northern District of California

6).  Counts 7 and 8 allege that AFSCME failed to extend medical leave in violation of the FMLA

and the California Family Rights Act ("CFRA"), Cal. Gov't Code § 12945.1 *et seq.*  Count 9 alleges

a state claim for wrongful termination in violation of public policy.  Count 10 alleges unlawful

retaliation.  The final count, Count 11, alleges that Rincon was entitled to overtime compensation

"[p]ursuant to state and federal law." Compl., Not. of Rem., Ex. A.  AFSCME removed the case to

this Court on August 8, 2012.  Dkt. No. 1.

AFSCME filed the present Motion for Summary Judgment on July 11, 2013, arguing that

summary judgment is appropriate as to all causes of action because Rincon does not deny (1) that

she was unable to work the extended hours required by the organizer position – hours that were

explicit in the job description and hours that all Organizers, Rincon included, worked – and (2) that

she received 64 weeks of medical leave in 2010 and 2011, well in excess of anything required by

federal or state law.  Mot. at 2.  Rincon filed an Opposition on July 25, 2013 (Dkt. No. 39), and

AFSCME filed a Reply on August 1, 2013 (Dkt. No. 42).  On August 11, 2013, Rincon sought leave

to file a Sur-reply, which the Court granted on August 12.  Dkt. Nos. 47, 49.

## LEGAL STANDARD

Summary judgment is appropriate only when there is no genuine dispute of material fact and

the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The moving party

bears both the initial burden of production as well as the ultimate burden of persuasion to

demonstrate that no genuine dispute of material fact remains.  *Nissan Fire & Marine Ins. Co., Ltd. v.

Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party meets its initial

burden, the nonmoving party is required "to go beyond the pleadings and by [its] own affidavits, or

by the depositions, answers to interrogatories, and admissions on file, designate specific facts

showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)

(internal quotations and citations omitted).  On summary judgment, courts are required to view the

evidence in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v.

Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If a reasonable jury could return a verdict in favor of

the nonmoving party, summary judgment is inappropriate.  *Anderson v. Liberty Lobby, Inc.*, 477

1    U.S. 242, 248 (1986).

2                                    **DISCUSSION**

3    **A.      ADA and FEHA Causes of Action (Claims 1 through 6)**

4          AFSCME first moves for summary judgment as to Rincon's ADA and FEHA causes of

5    action.  Mot. at 7-14.  In her first claim under FEHA, Rincon alleges that she was able to perform

6    her essential job duties, with reasonable accommodation, and that AFSCME's decision to terminate

7    her employment was motivated by her physical condition.  Compl. ¶¶ 22-32.  In her second claim

8    under the ADA, Rincon alleges that she was a qualified individual capable of performing the

9    essential functions of her job, with reasonable accommodation, and that AFSCME unlawfully

10   discriminated against her based on her disability when it terminated her employment.  *Id.* ¶¶ 33-41.

11   In her third and fourth claims, Rincon alleges that AFSCME failed to provide a reasonable

12   accommodation for her physical condition under FEHA and the ADA.  *Id.* ¶¶ 42-59.  In her fifth and

13   sixth claims, Rincon alleges that AFSCME failed to engage in an interactive process to determine

14   whether reasonable accommodations could be made so that she would be able to perform the

15   essential functions of her job.  *Id.* ¶¶ 60-76.

16         In its Motion, AFSCME first argues that Rincon cannot establish a prima facie case of

17   disability discrimination under the ADA or FEHA because hours "in excess of 40 hours per week or

18   8 per day . . . are essential functions of the organizer position."  Mot. at 9:6-8.  AFSCME argues that

19   Rincon was not able to work the required hours, with or without reasonable accommodation.  Mot.

20   at 8.  In the alternative, AFSCME argues that even if Rincon could establish a prima facie case, it

21   provided her with a reasonable accommodation and engaged in a sufficient good faith interactive

22   process.  Mot. at 11-14.  In response, Rincon argues that genuine issues exist as to whether extended

23   hours are an essential function of the Organizer position.  Opp. at 16; Sur-reply at 5.

24         The ADA prohibits employers from discriminating against any "qualified individual on the

25   basis of disability."  42 U.S.C. § 12112.  Similarly, under FEHA, it is unlawful for an employer to

26   discriminate on the basis of "physical disability."  Cal. Gov't Code § 12940(a).  In evaluating

27   discrimination claims under both the ADA and FEHA, courts apply the *McDonnell Douglas* three-

28

UNITED STATES DISTRICT COURT
For the Northern District of California

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  part burden-shifting framework. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 (2003) (citing

2  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Guz v. Bechtel Nat'l, Inc.,* 8 P.3d 1089,

3  1113 (Cal. 2000). Under this framework, the plaintiff must first establish a prima facie case of

4  disability discrimination; the burden then shifts to the employer to demonstrate a "legitimate,

5  nondiscriminatory reason" for the challenged action; and finally the burden shifts back to the

6  plaintiff to prove that the employer's asserted reason is pretextual. *Snead v. Metro. Prop. & Cas.*

7  *Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001).

8      To establish a prima facie case of disability discrimination under the ADA, Rincon must

9  prove that: (1) she is a disabled person within the meaning of the ADA; (2) she is a qualified

10  individual, meaning she can perform the essential functions of her job; and (3) AFSCME terminated

11  her because of her disability. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999).

12  To establish a prima facie case of disability discrimination under FEHA, Rincon must prove that: (1)

13  she suffers from a disability; (2) she is otherwise qualified to do her job; (3) she suffered an adverse

14  employment action; and (4) AFSCME  harbored discriminatory intent. *Avila v. Cont'l Airlines*, 165

15  Cal. App. 4th 1237, 1246 (2008). Because the FEHA provisions relating to disability discrimination

16  are based on the ADA, the state and federal disability claims may be analyzed together in the

17  absence of contrary or different law on a particular issue. *Humphrey v. Mem'l Hosps. Ass'n*, 239

18  F.3d 1128, 1133 n. 6 (9th Cir. 2001).

19          1.    <u>Disabled Person</u>

20      Under the ADA, disability is defined as a physical or mental impairment that substantially

21  limits one or more major life activities, a record of such an impairment, or being regarded as having

22  such an impairment. 42 U.S.C. § 12102(1). The extent to which a purported disability limits one or

23  more of the major life activities is an "individualized inquiry," requiring consideration of "the nature

24  and severity of the impairment, the duration or expected duration of the impairment, as well as the

25  permanent or long term impact of the impairment." *Fraser v. Goodale*, 342 F.3d 1032, 1038-39 (9th

26  Cir. 2003).

27      Here, there appears to be no dispute that Rincon is a disabled person. AFSCME does not

28

13

1    address this element in its Motion, but during her tenure with AFSCME, Rincon had injuries and

2    illnesses for which AFSCME gave her several short-term and three long-term medical leaves from

3    work.  Accordingly, examining the evidence in the light most favorable to Rincon, the Court finds

4    that she is a disabled person.

5            2.       Qualified Individual

6            Under the ADA and FEHA, a qualified individual is one with a disability who, with or

7    without reasonable accommodation, can perform the essential functions of the job the individual

8    holds.  *Samper v. Providence St. Vincent Med. Ctr.,* 675 F.3d 1233, 1237 (9th Cir. 2012) (ADA);

9    *Jackson v. Simon Prop. Grp., Inc.,* 795 F. Supp. 2d 949, 959 (N.D. Cal. 2011) (FEHA); *see also* 42

10   U.S.C. § 12111(8); Cal. Gov't Code 12940(a)(1).  Rincon bears the burden of demonstrating that she

11   can perform the essential functions of the job with or without reasonable accommodations.  *Kennedy*

12   *v. Applause, Inc.*, 90 F.3d 1477 1481 (9th Cir. 1996).  If Rincon cannot sustain her burden of

13   proving she is a qualified individual, able to perform the essential functions of her job with or

14   without reasonable accommodation, then summary judgment against Rincon is proper on not just the

15   disability discrimination claims, but also the claims alleging failure to accommodate and failure to

16   engage in the interactive process.  *Kramer v. Tosco Corp.*, 233 F. App'x 593, 596 (9th Cir. 2007)

17   (plaintiff cannot state interactive process claim where plaintiff cannot do essential functions of the

18   job with a reasonable accommodation); *Wilmarth v. City of Santa Rosa*, 945 F. Supp. 1271, 1279

19   (N.D. Cal. 1996) (no obligation to accommodate an employee who cannot perform the essential

20   functions of the job); *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 980-81

21   (2008) (plaintiff can state a claim for failure to accommodate only where reasonable accommodation

22   would enable plaintiff to do essential functions of job).

23           Here, Rincon does not dispute that she is unable to work extended hours in excess of 40

24   hours a week or 8 hours a day.  And she also does not dispute that, if extended hours are an essential

25   function of AFSCME's organizer position, AFSCME is entitled to summary judgment on her ADA

26   and FEHA causes of action.  Instead, Rincon asserts that she was a qualified individual with a

27   disability because, beginning in October of 2010, she was cleared to return to work as an Organizer

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

14

UNITED STATES DISTRICT COURT
For the Northern District of California

1   with the restriction that she work no more than 40 hours per week or 8 hours per day.  Opp. at 16-18;

2   JSUF ¶ 36.  However, AFSCME argues that hours in excess of 40 per week or 8 per day are

3   essential functions of the Organizer position.  Mot. at 9.

4        The job description for the Organizer position states, among other things, that "[d]riving,

5   travel, temporary assignments and extended work hours are required."  JSUF ¶ 3.  Rincon, however,

6   argues that a job description is not conclusive evidence and directs the Court's attention to the

7   following evidence, which she contends are material facts that require a jury to resolve: (1)

8   AFSCME voluntarily agreed to significantly generous leave policies for its Organizers, including in

9   the case of parental leave six months of unpaid leave followed by three months of eligibility for a

10  reduced schedule, as low as three days a week; (2) AFSCME never tried to hire anyone to fill

11  Rincon's California position; (3) another employee was afforded a modified schedule, restricted to

12  an 8-hour day, based on the fact she was on FMLA leave; and (4) AFSCME repeatedly informed the

13  State of California that Rincon worked a 35-hour week.  Opp. at 16-17.

14       Evidence of whether a particular function is essential includes, but is not limited to, the

15  following:

16      (i)    The employer's judgment as to which functions are essential;
        (ii)   Written job descriptions prepared before advertising or interviewing applicants for
17             the job;
        (iii)   The amount of time spent on the job performing the function;
18      (iv)   The consequences of not requiring the incumbent to perform the function;
        (v)    The terms of a collective bargaining agreement;
19      (vi)   The work experience of past incumbents in the job; and/or
        (vii)   The current work experience of incumbents in similar jobs.

20

21  29 C.F.R. § 1630.2(n)(3); *see also* Cal. Gov't Code 12926(f)(2).  Here, in viewing the evidence in a

22  light most favorable to Rincon, the Court finds that all of these factors compel the conclusion that

23  extended hours are an essential function of AFSCME's Organizer position.

24       First, AFSCME's judgment consistently has been that the Organizer position requires

25  extended hours in excess of 40 per week or 8 per day.  *See e.g.,* Sukal Decl. ¶13; Borton Decl. ¶¶ 14-

26  15 (rejecting hours restriction in 2007); *Id.* ¶¶ 20-21 (rejecting restriction in 2009); *Id.* ¶¶ 28-29

27  (rejecting restriction in 2010); *Id.* ¶¶ 31-32 (rejecting restriction in 2011).  Second, it is undisputed

28

15

1  that both the written job description for Organizer – which was the operative description when

2  Rincon applied and was hired – and the 2011 version provided that "extended work hours are

3  required." JSUF ¶ 3.

4      Third, Rincon acknowledges that she worked more than 40 hours a week or 8 hours a day in

5  the position. Mot., Ex. 1 (Functional Medicine Assessment Patient Questionnaire) ("expected hours

6  to work" . . . [o]ften 6-7 days per week – over 10-14 hour/day"); *Id.*, Ex. 2 (Rincon Depo.) at 98-99

7  (explaining that during organizing blitzes, she worked more than eleven hours per day, sometimes

8  10 days in a row). Rincon's medical provider submitted a medical release on October 15, 2010,

9  which indicated that she could return to her job as of November 1, 2010, but that she was "no longer

10  capable of working 80 hours [a] week." JSUF ¶ 36. This is further confirmed by the testimony of

11  Rincon's former supervisors, all of whom state that Rincon, as well as other Organizers, regularly

12  worked hours in excess of 40 a week or 8 a day. Klinglesmith Decl. ¶ 8, Dkt. No. 33; Wilson Decl.

13  ¶ 7, Dkt. No. 35; DeJesus Decl. ¶ 7, Dkt. No. 34.

14      Finally, AFSCME has also submitted evidence that shows extended hours are essential to the

15  success of its organizing campaigns. Mike Sukal, AFSCME's Director of Organizing and Field

16  Services, explained the necessity of extended hours as follows:

17          For various strategic reasons, organizing campaigns as a general matter are structured
           around goals and aims with relatively short-time frames. In addition, field work on an
18          organizing campaign is often driven by crisis or opportunities with workers, existing
           locals, or other non-profit allies that cannot be anticipated or planned for in advance.
19          Even the basic organizer responsibility of making contact with workers and building
           relationships with them requires extended hours – being at the work site during the
20          day, visiting workers in their homes in the evenings, and making and taking
           telephone calls at all hours, even on days off . . . AFSCME organizers work long-
21          hours and doing so is essential to the success of our organizing campaigns.

22  Sukal Decl. ¶¶ 13-14. Indeed, Rincon's own expert report reflects that she "[d]id not seek work

23  in other unions as she feared they would have similar demands for hours well beyond 40 hours

24  per week." Mot., Ex. 3 (May 3, 2013 Report by Mary Ciddio) at 7.

25      In support of her contention that hours in excess of 40 a week or 8 a day are not part of the

26  essential functions of the Organizer position, Rincon directs the Court's attention to: (1) AFSCME's

27  leave policies, including in the case of parental leave six months of unpaid leave followed by three

28

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

months of eligibility for a reduced schedule, as low as three days a week; (2) an allegation (without any supportive evidence) that AFSCME did not fill the vacancy created by her termination; (3) an allegation that AFSCME temporarily accommodated two other employees with a modified schedule; and (4) a supervisor's statement that Organizers should let him know if they will be absent so he could find a replacement. Opp. at 16-17. However, the Court finds that these allegations, even if true, do not create a genuine question of fact. Courts have consistently held that an employer's willingness to make an exception to the essential functions of a job in particular circumstances, especially ones that have a limited duration, do not create a disputed question of fact as to what the essential functions are. For example, in *Robert v. Bd. of Cnty. Comm'rs*, 691 F.3d 1211, 1217 (10th Cir. 2012), the court explained that "a plaintiff cannot use her employer's tolerance of . . . temporary nonperformance of essential duties as evidence that those duties are nonessential. To give weight to such a fact would perversely punish employers for going beyond the minimum standards of the ADA." *See also Laurin v. Providence Hosp.*, 150 F.3d 52, 60-61 (1st Cir. 1998) ("An employer does not concede that a job function is 'non-essential' simply by voluntarily assuming the limited burden associated with a temporary accommodation."); *Basith v. Cook Cnty.*, 241 F.3d 919, 930 (7th Cir. 2001) (similar). Courts have also rejected arguments that an employer's leave policies that result in a temporary non-performance of a job duty can be used as evidence that the job duty is non-essential. *See, e.g., Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Circuits*, 601 F.3d 674, 681 (7th Cir. 2010) (temporary assignment during pregnancy or to recover from injury or operation does not create an obligation to accommodate plaintiff with a permanent position)[2]; *Thornberry v. City of Hobart*, 2008 WL 4367582, at *16 (N.D. Ind. Sep. 18, 2008) (rejecting argument that employer's leave policies create triable issue as to whether regular

---

[2] In her Sur-reply, Rincon attempts to distinguish *Gratzl* from her case, arguing that the court found an employer's willingness to extend accommodations to other workers irrelevant because the position at issue had been eliminated. Sur-reply at 8. However, the while acknowledging that the previous position (specialist) had been eliminated, the court held that "even if the court continued the practice of temporarily reassigning court reporters to the control room, we have already noted that this would not create an obligation that it accommodate Gratzl with a permanent control-room position." *Gratzl*, 601 F.3d at 681. Thus, Rincon's argument is without merit.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   attendance is an essential function)[3].

2       As to the two employees Rincon alleges received a part-time schedule, one, Ms. Lebrecht,

3   was not an Organizer, but a International Union Representative, and Rincon has presented no

4   admissible evidence that those two positions are functionally identical.  Borton Decl. ¶ 58.

5   Moreover, it is undisputed that Lebrecht's part-time schedule was approved for a limited duration.

6   *Id.*  Rincon's hours restrictions, in contrast, were for an "unknown" duration.  Johnston Decl., Ex.

7   AA; JSUF ¶¶ 36, 39.  The second employee, Enrique Mejia, also worked as an Organizer and was

8   limited by his physician to an eight-hour workday.  Johnston Decl, Ex. FF.  However, Rincon has no

9   produced no evidence disputing AFSCME's evidence that Mejia's temporary restrictions were

10  neither approved by AFSCME nor actually resulted in him limiting his day to no more than 8 hours.

11  Borton Decl. ¶ 57.  Rather, the evidence before the Court establishes that Mejia did not make a

12  formal request through the AFSCME HR Department, no medical form exists in Mejia's file that

13  approved such a restriction, and Mejia actually worked full-time as an Organizer, but his supervisor

14  accommodated him by allowing him to take breaks.  *Id.*; Johnston Decl., Ex. OO (Borton Depo.) at

15  79:4-80:8.

16      Finally, Rincon directs the Court's attention to forms AFSCME filed with California's

17  Division of Worker's Compensation and Employment Development Department, in which

18  AFSCME  reported Rincon's hours as 35 per week.  Opp. at 17.  However, Sharon Borton,

19  AFSCME's Assistant Human Resources Director and 30(b)(6) witness testified that these forms

20  describe Rincon's position as 35 hours per week, not because that's what an Organizer works, but

21  because that is what Human Resources uses as its standard week and the number that is used to

22  prorate salaries and leave usage.  Carter Decl., Ex. A (Borton Depo.) at 40:14-44:2; *see also* Borton

---

[3] In her Sur-reply, Rincon attempts to distinguish *Thornberry* from her case, arguing that the court there focused on the plaintiff's argument that the employer's leave policies "meant that *none* of the plaintiff's duties could be considered essential."  Sur-reply at 8.  However, the court specifically addressed the leave policy, finding that "[t]he fact that Plaintiff was entitled to take days off in accordance with Defendants' leave policy does not mean that reporting for duty was not an essential function of his position."  Rincon's argument is, again, without merit.

1   Decl. ¶¶ 2, 53.  Further, as discussed above, Rincon herself has admitted that she worked hours in

2   excess of 40 per week or 8 per day, and there is undisputed evidence from Rincon's supervisors that

3   she and her colleagues all worked similar hours.

4        Based on this evidence, the Court finds that there is no genuine dispute that extended hours

5   are an essential function of the Organizer position.  And, as Rincon is unable to work such hours,

6   she is unable to establish a prima facie case.  *See Jackson*, 795 F. Supp. 2d at 961-62 (finding

7   plaintiff was unable to state a prima facie case where the evidence, including the plaintiff's

8   acknowledgment that he worked 50-70 hours per week, established that an essential function of the

9   job included hours in excess of 50 hours per week); *Davis v. Fla. Power & Light Co.*, 205 F.3d

10  1301, 1306 (11th Cir. 2000) (mandatory overtime is essential function when "overtime is the tool

11  that gets that work done"); *Tjernagel v. Gates Corp.*, 533 F.3d 666, 673 (8th Cir. 2008) (overtime is

12  essential function where job description stated it was required and plaintiff worked most Saturdays);

13  *Zaborowski v. Sealright Co.*, 2002 WL 1585521, at *4 (N.D.N.Y. July 9, 2002).  Thus, because

14  extended hours, beyond 40 hours a week or 8 hours a day, is an essential function of AFSCME's

15  Organizer position, and because Rincon's medical restriction precluded her from working those

16  hours, Rincon cannot establish a prima facie case.  Her claim therefore fails on this ground.

17       3.      Termination Related to Disability

18       As part of the prima facie case under the ADA, Rincon must show that she was terminated

19  because of her disability.  *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  To

20  prove an ADA and FEHA claim, a plaintiff must prove that the employer had knowledge of the

21  employee's disability when the adverse employment decision was made.  *Brundage v. Hahn*, 57

22  Cal.App.4th 228, 236-37 (1997).  Here, there is no dispute that Rincon's termination was related to

23  her disability.

24       4.      Summary

25       Based on the analysis above, the Court finds that Rincon is unable to establish a prima facie

26  case of disability discrimination because she is not qualified for the Organizer position.

27  Accordingly, AFSCME's Motion as to Rincon's ADA and FEHA claims is GRANTED.

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

**B.      FMLA and CFRA Causes of Action (Claims 7 and 8)**

In her Seventh Cause of Action, Rincon alleges that she was eligible and applied for medical leave under the CFRA, but AFSCME refused her request.  Compl. ¶¶ 77-86.  Rincon brings the same claim under the FMLA in her Eighth Cause of Action.  *Id.* ¶¶ 87-95.  AFSCME argues that the undisputed facts show it allowed Rincon to take far more leave for her medical condition than either law required, and therefore she has no cognizable claim under either law.  Mot. at 18.

Both the FMLA and CFRA entitle an eligible employee to a total of 12 weeks leave during any 12-month period for family care and medical leave, including "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. 2612(a)(1); *see also* Cal. Gov't Code 12945.2(a).  By statute, the twelve week period granted by the CFRA runs concurrently with the twelve week period granted by the FMLA, meaning that an employee eligible under both statutes is entitled to only twelve weeks in total.  Cal. Gov't Code 12945.2(s).  "Because the CFRA and the FMLA contain nearly identical provisions regarding family or medical leave . . ., California courts routinely rely on federal cases interpreting the FMLA when reviewing the CFRA."  *Rogers v. Cnty. of L.A.*, 198 Cal. App. 4th 480, 487 (2011).

Here, there is no dispute that AFSCME allowed Rincon to take far more than twelve workweeks of leave.  For her third approved medical leave alone, from May 3, 2010, until July 31, 2011, Rincon was granted 64 weeks of leave due to her medical condition.  JSUF ¶ 43.  Rincon appears to base her claim for denial of FMLA/CFRA leave on her allegation that AFSCME incorrectly told her in September 2010 that she was ineligible for FMLA leave because she had not worked sufficient hours.[4]  Compl. ¶ 9.  However, any factual dispute about whether or not Rincon had worked sufficient hours in the year preceding September 2010 is immaterial because, at that point, she had already been granted far more than the 12 weeks of leave required by either law.  And, regardless of whether AFSCME told her she was not eligible for FMLA leave at that time, AFSCME did not terminate her employment; rather, it allowed her to continue taking leave for far

---

[4]The FMLA and CFRA require an employee to have worked at least 1250 hours in the preceding twelve months.  *See* 29 U.S.C. 2611(2)(a)(ii); Cal. Gov't Code 12945.2(a).

1    more than 12 weeks.  JSUF ¶ 43.

2         Further, although the leave taken by Rincon was paid, (*see* JSUF ¶ 46), both the FMLA and

3    CFRA are clear that an employer may count leave taken under a paid leave policy against the

4    employee's statutory entitlement.  29 U.S.C. § 2612(d)(2)(B); Cal. Gov't Code § 12945.2(e).

5    AFSCME's FMLA policy states that AFSCME counts paid leave taken for a FMLA-qualifying

6    condition towards the employee's statutory leave entitlement.  JSUF ¶ 50.  Thus, it cannot be

7    disputed that the paid leave taken by Rincon starting May 2010 counted against her entitlement to

8    leave under the FMLA and the CFRA.

9         Even if AFSCME failed to designate the medical leave Rincon took beginning in May 2010

10   as FMLA/CFRA leave, a failure to designate leave only gives rise to a cause of action "[i]f [the]

11   failure to timely designate . . . causes the employee to suffer harm."  29 C.F.R. § 825.301(e).  An

12   employee that is not harmed by the employer's failure to designate the leave — including, for

13   instance, an employee whose "own serious health condition prevented him or her from returning to

14   work during that time period regardless of the designati[o]n" — will not state a claim.  *Id.*  A

15   contrary rule, the Supreme Court has stated, would "subvert . . . the careful balance" of the statute,

16   by "giv[ing] certain employees a right to more than 12 weeks of leave."  *Ragsdale v. Wolverine*

17   *World Wide, Inc.*, 535 U.S. 81, 94 (2002).

18        California courts construing the CFRA have followed the Supreme Court's rationale in

19   holding that, where an employee is granted leave under the employer's paid leave policy, an

20   employer's mere failure to designate that leave as CFRA leave does not entitle the employee to

21   an additional twelve weeks.  *See, e.g., Rogers*, 198 Cal. App. 4th at 490.  Here, because Rincon can

22   show no prejudice arising out of AFSCME's failure to inform her that her paid leave beginning in

23   2010 would count against her FMLA/CFRA entitlement, she states no claim under the FMLA or

24   CFRA.  *Ragsdale*, 535 U.S. at 89; *Liston v. Nevada ex rel. its Dep't of Bus. & Indus.*, 311 F. App'x

25   1000, 1002 (9th Cir. 2009).

26        Nor can Rincon show economic damages arising out of the denial of FMLA leave.  Because

27   it is undisputed that Rincon received paid leave through the use of the union leave bank, she can

28

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

show no economic harm arising out of any denial of FMLA leave by AFSCME.  As such, she states

no claim under either the FMLA or CFRA.  *See Stevens v. Cnty. of San Mateo*, 2006 WL 581092, at

*10 (N.D. Cal. Mar. 7, 2006) (granting summary judgment to employer on FMLA claim because

plaintiff alleged only emotional harm arising out of his FMLA claim), *aff'd*, 267 F. App'x 684 (9th

Cir. 2008).

Based on this analysis, AFSCME's Motion as to Rincon's FMLA and CFRA claims is

GRANTED.

**C.      Wrongful Termination Cause of Action (Claim 9)**

In her Ninth Cause of Action, Rincon alleges wrongful termination in violation of public

policy under California Government Code section 12920, which prohibits discrimination on account

of physical disability related to the right to seek, obtain, and hold employment.  Compl. ¶¶ 96-103.

This claim, however, is derivative of Rincon's claim that AFSCME engaged in disability

discrimination in violation of the ADA and FEHA (Counts 1-6) and/or engaged in unlawful

retaliation, which is the tenth claim in her Complaint.  Mot., Ex. 5 (Pl.'s Int. Rsp.) at No. 10.  Thus,

because Rincon "has not established a triable issue of material fact with respect to [her] ADA and

FEHA claims, [her] claim for wrongful termination in violation of public policy likewise fails," and

AFSCME is entitled to summary judgment.  *Dow v. Lowe's Home Improv., Inc.*, 2006 WL 3507935,

at *12 (N.D. Cal. Dec. 5, 2006) ("Here, Dow's claim for wrongful termination in violation of public

policy is based entirely on asserted violations of the ADA and FEHA.  Because Dow has not

established a triable issue of material fact with respect to his ADA and FEHA claims, his claim for

wrongful termination in violation of public policy likewise fails.").  Accordingly, AFSCME's

Motion as to Rincon's wrongful termination claim is GRANTED.

**D.      Retaliation Cause of Action (Claim 10)**

In her tenth cause of action, Rincon alleges that AFSCME retaliated against her, in violation

of 42 U.S.C. § 12203 and Cal. Gov't Code 12940(h), for exercising a variety of rights by: (1)

denying her FMLA leave; (2) denying her request to work 40 hours a week or 8 hours a day; (3)

refusing to promote her to Organizer II; (4) terminating her eligibility for the sick leave bank; (5)

1   denying her grievance regarding sick leave bank eligibility; and (6) terminating her employment.

2   Compl. ¶ 104-110; Mot., Ex. 5 (Pl.'s Supp'l Int. Resp) at No. 16 and 17.

3        To establish a prima facie case of retaliation under the ADA or FEHA, an employee must

4   show that: (1) he or she engaged in a protected activity; (2) suffered an adverse employment action;

5   and (3) there was a causal link between the two. *Brown v. City of Tucson,* 336 F.3d 1181,

6   1186-87 (9th Cir. 2003).  Even if an employee can establish a prima facie case, however, if the

7   employer offers legitimate reasons for the adverse employment action, the burden shifts back to the

8   employee to demonstrate a triable issue of fact that such reasons are pretextual.  *Brooks v.*

9   *City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000).  Mere temporal proximity between protected

10  conduct and the adverse action is inadequate to create a triable issue where the employer produces

11  evidence of a legitimate, non-discriminatory reason for the actions.  *Nadaf-Rahrov*, 166 Cal. App.

12  4th at 990.

13        1.    Reduced Schedule and Termination

14        As discussed above, AFSCME had a legitimate non-retaliatory reason for the denial of a

15  reduced schedule and the termination of Rincon's employment – the Organizer position required

16  extended hours, beyond 40 hours a week or 8 hours a day, and Rincon's medical restriction

17  precluded her from working those hours.  As such, even if Rincon could establish a causal link

18  between her activity and the adverse employment action, she cannot defeat AFSCME's showing that

19  it had legitimate non-retaliatory reasons for these actions.  *Patterson v. City of Seattle*, 97 F.3d 1460

20  (9th Cir. 1996) (unpublished), 1996 WL 528267, at *4 (retaliation claims that allege "nothing more

21  than variations on . . . failure to accommodate claim [are] without merit"); *Hatcher v. Philander*

22  *Smith Coll.*, 251 F.3d 670, 676 (8th Cir. 2001) (retaliation claim fails where no evidence plaintiff

23  "was terminated for any reason other than her inability to perform the essential functions . . . with or

24  without reasonable accommodation").

25        2.    FMLA Leave

26        The claim that AFSCME retaliated against Rincon by denying her FMLA leave in September

27  2010 fails for the same reasons discussed above regarding her FMLA claim – namely, AFSCME

28

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1  provided Rincon with leave in excess of that which she was entitled to under the FMLA.  Thus, even

2  if Rincon were correct that AFSCME's FMLA eligibility calculation was erroneous, that does not

3  change the fact that AFSCME gave her leave above and beyond what the FMLA requires.

4  Therefore, the Court finds that Rincon did not suffer any "adverse employment action" as the result

5  of AFSCME's FMLA denial.  Moreover, there was nothing retaliatory in AFSCME's eligibility

6  calculation – as discussed below, the undisputed testimony is that AFSCME uniformly uses a 35

7  hour work week in calculating FMLA eligibility for all employees, regardless of position.  JSUF ¶

8  62.

9              3.       Organizer II Position

10             With respect to AFSCME's failure to promote Rincon to Organizer II, the undisputed facts

11 show that she did not meet the basic qualifications for that position.  The Organizer II position

12 required "at least 5 years satisfactory performance as a Grade 5 Organizer" and "a demonstrated

13 capacity to undertake more difficult organizing assignments."  JSUF ¶ 57.  AFSCME notified

14 Rincon that she would not receive the promotion because "you have not been able to establish a

15 record of satisfactory performance over the last two years.  Should you return to work and establish

16 a record of satisfactory performance for one year, you may reapply for the position."  *Id.* ¶ 59.

17 Indeed, between her September 7, 2004 start date and her request for promotion on December 13,

18 2010, Rincon had been out 117 weeks, or over 2 years, which meant she was a year short of the

19 required five years of experience required for the Organizer II position.  Borton Decl. ¶ 52.  Thus,

20 AFSCME has offered a legitimate, nonretaliatory reason as to why it denied Rincon's promotion to

21 Organizer II.  *See, e.g., Ramirez-Rodriguez v. Boehringer Ingelheim Pharm., Inc.*, 425 F.3d 67, 82

22 (1st Cir. 2005) (finding employer provided legitimate, non-discriminatory reason in not providing

23 plaintiff with merit increase where merit increases "are based on the sales and general performance

24 of any given representative during a one year period" and the employer "was unable to evaluate

25 [plaintiff's] performance" for the time he was out on leave); 29 C.F.R. § 825.215(d)(2) (no

26 entitlement to "accrue any additional benefits or seniority during unpaid FMLA leave").

27             Rincon argues that AFSCME's argument should be rejected because two other Organizers

28

24

UNITED STATES DISTRICT COURT
For the Northern District of California

1   who had less than five years of actual time due to medical leaves were granted promotions on their

2   five-year anniversary dates. Opp. at 19. Specifically, Rincon directs the Court's attention to

3   Michael Butler and James Spear, both former Organizers who were promoted to the Organizer II

4   position on the fifth anniversary of their hire dates, despite having been out for a time on FMLA

5   leave. Johnston Decl., Exs. DD, EE. The forms relied upon by Rincon show only that at some point

6   both Butler and Spears took leave that was FMLA-qualifying. However, the question is not whether

7   they took FMLA-qualifying leave, but rather whether they took leave in excess of their accrued

8   vacation or sick leave, such that they should be considered to have less than five years of experience

9   or could not be evaluated as having demonstrated the capacity required. The undisputed evidence

10   establishes that neither Butler or Spears took any leave beyond their accrued vacation or sick leave

11   in the year before their promotion to Organizer II and, because they still had five years of experience

12   as an Organizer even after subtracting any leave taken beyond what was earned and accrued by

13   them, their promotions are not evidence of pretext. Di Domenico Decl. ¶¶ 3-4, Dkt. No. 46.

14        Accordingly, Rincon is unable to establish a retaliation claim based on AFSCME's failure to

15   promote her to Organizer II, and summary judgment is therefore appropriate as to this claim as well.

16        4.   Eligibility for Sick Leave Bank and Termination of Grievance

17        Rincon also alleges that AFSCME terminated her union sick leave bank benefits in May of

18   2011, and then denied her grievance challenging that termination, in retaliation for her protected

19   conduct in seeking leave. However, AFSCME denied Rincon continued use of the sick leave bank

20   because she no longer met the eligibility requirement of "a certified medical need [for sick leave]

21   attested by their physician." JSUF ¶ 48; Borton Decl. ¶ 40. Sick leave bank benefits are "designed

22   to support employees when they have a serious personal illness." JSUF ¶ 49. Thus, as Rincon's

23   doctor stated that she was capable of working an 8 hour day and there were positions within

24   AFSCME that satisfy that restriction, Rincon was no longer qualified. JSUF ¶¶ 39, 41; Borton Decl.

25   ¶ 34.

26        Rincon argues that there is a triable issue as to whether AFSCME's decision to terminate her

27   union sick leave bank benefits in May 2011 was pretextual because, under AFSCME's stated

28

1   rationale that she no longer had a certified medical need, AFSCME could have terminated her

2   benefits in October 2010 but chose not to do so.  Opp. at 19-20.  In making this argument, the Court

3   notes that Rincon is not alleging that AFSCME would not have had a legitimate, non-retaliatory

4   reason to have terminated her sick leave bank benefits in October 2010, but rather that AFSCME's

5   decision to provide benefits for an additional seven months constitutes evidence of pretext.  As

6   courts recognize, however, AFSCME's decision to permit Rincon to continue to receive benefits,

7   even after she no longer needed them, does not support a claim of pretext.  *See, e.g, Castello v. Delta*

8   *Air Lines, Inc.*, 1996 WL 563544, at *5 (N.D. Ill. Oct. 1, 1996) (rejecting employer's "change of

9   mind" about reinstatement and employer's voluntary past work schedule accommodation as being

10  evidence of pretext — "Castello seems to be complaining that Delta did too much to accommodate

11  her"); *Schaeffer v. Tractor Supply Co.*, 2010 WL 2474085, at *7 n.3 (E.D. Mich. June 9, 2010)

12  (holding that "[defendant]'s prior accommodation of [plaintiff's] needs is not relevant to a claim of

13  pretext.").

14          With respect to the grievance, the undisputed evidence is that AFSCME denied Rincon's

15  grievance for the legitimate, non-retaliatory reason that the grievance was untimely.  JSUF ¶¶ 53,

16  54. The collective bargaining agreement requires that a grievance be filed "within thirty (30)

17  calendar days of the date [the] occurrence or from when the employee reasonably became aware of

18  the occurrence."  Borton Decl., Ex. C at 9.  Here, Rincon and USU were notified of the decision to

19  terminate sick leave bank access on May 31, 2011, but the grievance was not filed until July 1, 2011.

20  JSUF ¶¶ 52-53.  Rincon has presented no evidence to dispute AFSCME's testimony that it routinely

21  denies union grievances filed beyond the 30 day window.  Borton Decl. ¶ 45.  Significantly, the

22  union decided not to appeal the denial under the procedures in the agreement.  JSUF ¶ 55; Borton

23  Decl. ¶46.

24          5.   <u>Summary</u>

25          Because AFSCME has presented a clear, non-retaliatory reason for each of Rincon's claimed

26  instances of retaliation, and Rincon has adduced no evidence that AFSCME's reasons are pretextual,

27  summary judgment must be GRANTED as to AFSCME on the retaliation claim.

28

**E.      Overtime Cause of Action (Claim 11)**

In her Eleventh Cause of Action, Rincon alleges a claim for overtime pay under state and federal law.  Compl. ¶¶ 111-17.  AFSCME argues that the Organizer position is properly classified as exempt because the work is directly related to the management or general business operations of AFSCME and its customers, and Organizers' duties include the exercise of discretion and independent judgment.  Mot. at 22-23.

The Fair Labor Standards Act ("FLSA") requires that employers ordinarily pay their employees time and one-half for work exceeding 40 hours per workweek.  29 U.S.C. § 207(a)(1).  The FLSA provides an exemption from overtime for persons "employed in a bona fide executive, administrative, or professional capacity" and grants the Secretary of Labor broad authority to promulgate regulations to "define[] and delimit []" the scope of the exemption.  *Id.* § 213(a)(1).  An "employer who claims an exemption from the FLSA has the burden of showing that the exemption applies."  *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983) (per curiam).  The FLSA "is to be liberally construed to apply to the furthest reaches consistent with Congressional direction.  To that end, FLSA exemptions are to be narrowly construed against . . . employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit."  *Klem v. Cnty. of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000) (internal quotation marks and citations omitted).  In order for an employee to be exempt from overtime requirements under the FLSA: (1) the employee must be compensated on a salary basis of not less than $455 per week; (2) her primary duties must be the performance of office or non-manual work directly related to the management or general business operations of the employer or its customers; and (3) her primary duties must include the exercise of discretion and independent judgment in matters of significance.  29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.200.

Under the California Labor Code, administrative employees are also exempted from overtime requirements.  Cal. Lab. Code § 515(a).  The California Industrial Wage Commission has issued a Wage Order defining the administrative exemption (Order #4, § 1), which is promulgated at Cal. Regs. Tit. 8, Section 11040.  The state law test "closely parallels the federal regulatory

UNITED STATES DISTRICT COURT
For the Northern District of California

27

1  definition of the same exemption," *Combs v. Skyriver Commc'ns, Inc.*, 159 Cal. App. 4th 1242, 1255

2  (2008), although the weekly salary must be at least $640 per week, and the inquiry focuses on the

3  activities in which the employee is "primarily engaged," rather than the employee's "primary

4  duties." Cal Lab. Code §§ 515(a), 515.5, 516.5

5      1.    Salary

6      There is no dispute that the salary requirement is met under either the federal or state law test

7  because the undisputed facts show that Rincon was paid on a salary basis of more than $640 per

8  week.  JSUF ¶ 7.

9      2.    Performance of Office or Non-Manual Work Directly Related to the Management or
            General Business Operations of the Employer or its Customers

10

11     Next, the Court must determine whether Rincon primarily performed work directly related to

12 the management or general business operations of the AFSCME or its customers.  Department of

13 Labor regulations explain that the work contemplated by the phrase "directly related to the

14 management or general business operations" is "work directly related to assisting with the running

15 or servicing of the business, as distinguished, for example, from working on a manufacturing

16 production line or selling a product in a retail or service establishment."[5]  29 C.F.R. § 541.201(a).

17 "'[P]rimary duty' means the principal, main, major or most important duty that the employee

18 performs."  29 C.F.R. § 541.700(a).  The Court's evaluation of the primary duty must be "based on

19 an examination of the totality of the facts involved in the employment situation."  *Moran v. GTL*

20 *Const., LLC*, 2007 WL 2142343, at *2 (S.D.N.Y. July 24, 2007).

21         a.    *Office or Non-Manual Work*

22     As an Organizer, it is undisputed that Rincon was sent out into the community to speak with

23 employees about AFSCME, visiting workers at their homes and on job sites, often without any

24 supervisor accompanying her.  JSUF ¶¶ 8, 9.  During her employment at AFSCME, Rincon was

25 assigned to organizing campaigns in California, Missouri, and Kentucky.  *Id.* ¶ 6.  AFSCME also

26 _____

27     [5]"We must give deference to DOL's regulations interpreting the FLSA."  *Auer v. Robbins*,
   519 U.S. 452, 457 (1997); *Bratt v. Cnty. of Los Angeles*, 912 F.2d 1066, 1070-71 (9th Cir. 1990).

28

UNITED STATES DISTRICT COURT
For the Northern District of California

28

1   submits evidence that Organizers must "reach out to unrepresented workers and lead those workers

2   through the process of organizing."  Sukal Decl. ¶ 5.  This establishes that Rincon's primary duty for

3   AFSCME entailed fieldwork, which is not "office" work.  *Savage v. UNITE HERE*, 2008 WL

4   1790402, at *6 (S.D.N.Y. Apr. 17, 2008).

5          However, fieldwork is not necessarily "manual" work.  According to the regulations, the

6   exemption is not intended to apply to those "who perform work involving repetitive operations with

7   their hands, physical skill and energy."  29 C.F.R. § 541.3(a).  Examples of employees who are not

8   exempt based on the manual nature of their labor include "non-management employees in

9   maintenance, construction and similar occupations such as carpenters, electricians, mechanics,

10  plumbers, iron workers, craftsmen, operating engineers, longshoremen, construction workers and

11  laborers."  *Id.*  Here, Rincon's work is of a very different type than the work that the regulations

12  characterize as "manual" in nature.  *Savage*, 2008 WL 1790402, at *6 (finding that the work of a

13  union organizer is exempt under the FLSA where the plaintiff's day-to-day activities as an organizer

14  centered on her ability to communicate with, recruit and motivate workers).  The undisputed

15  evidence establishes that Rincon's primary duty was to organize workers.  Further, even if Rincon

16  were to perform some tasks that are ineligible under the exemption, "an exempt employee can

17  perform some manual work without losing exempt status."  *Schaefer v. Ind. Mich. Power Co.,* 358

18  F.3d 394, 401 (6th Cir. 2004).

19         Consistent with an interpretation of "non-manual work" that includes work performed

20  outside the office, courts have found that union organizers and business representatives working

21  outside of an office or in the field can be exempt "administrative" employees.  *See, e.g., Webster v.

22  Pub. School Empl. of Wash., Inc.*, 247 F.3d 910, 918-19 (9th Cir. 2001) (labor union field

23  representative who negotiated collective bargaining agreements and handled grievances was an

24  exempt administrative employee); *Ferrell v. Gwinnett County Bd. of Ed.*, 481 F. Supp. 2d 1338,

25  1348-49 (N.D. Ga. 2007) (school police officers' work was primarily "non-manual" even though a

26  substantial portion of their work was performed outside the office - their work consisted mostly of

27  interacting with school personnel, answering questions, writing reports, testifying at hearings,

28

UNITED STATES DISTRICT COURT
For the Northern District of California

29

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    conducting investigations, surveying school ground and patrolling hallways; *Roe-Midgett v. CC*

2    *Services, Inc.*, 512 F.3d 865, 874 (7th Cir. 2008) (claims adjusters working in the field are exempt

3    administrative employees); *Cote v. Burroughs Wellcome Co.*, 558 F. Supp. 883, 886-87 (E.D. Pa.

4    1982) (employee employed by a manufacturer of pharmaceutical products as a professional

5    representative or detail person was an exempt administrative employee).  Thus, the Court finds that

6    AFSCME has successfully established that there is no genuine issue of fact as to whether Rincon's

7    primary duty involved non-manual work.

8              b.     *Work "Directly Related" to Management or General Business Operations*

9              To satisfy the requirement that an employee's work is directly related to the employer's

10   management or general business operations, "an employee must perform work directly related to

11   assisting with the running or servicing of the business, as distinguished, for example, from working

12   on a manufacturing production line or selling a product in a retail or service establishment."  29

13   C.F.R. § 541.201.  However, courts have recognized that the administration/production dichotomy is

14   merely illustrative - unless the work falls squarely on the production side - and may be of limited

15   assistance outside the manufacturing context.  *See, e.g., Savage*, 2008 WL 1790402, at *7; *Edwards*

16   *v. Audubon Ins. Grp., Inc.*, 2004 WL 3119911, at *5 (S.D. Miss. Aug. 31 2004) ("The

17   administrative-production dichotomy is not a rule of law."); *Robinson-Smith v. Gov't Emp. Ins. Co.*,

18   323 F.Supp.2d 12, 19 (D.D.C. 2004) (declining to "analyze the current situation under an outmoded

19   line of reasoning"); *Roe-Midgett*, 512 F.3d at 872 (dichotomy is "only useful by analogy in the

20   modern service-industry context").

21             In *Webster*, a case involving a labor union field representative who negotiated collective

22   bargaining agreements and handled grievances, the Ninth Circuit explained that the "purpose of the

23   dichotomy is to clarify the meaning of 'work directly related to the management policies or general

24   business operations,' not to frustrate the purpose and spirit of the entire exemption."  247 F.3d at

25   916.  The Ninth Circuit recognized that, under a rigid application of the dichotomy that would

26   characterize the negotiation of the agreements as the bargaining units' "production," any work

27   "including that of a president or CEO for a legal entity that addresses primarily management or

28

                                              30

UNITED STATES DISTRICT COURT
For the Northern District of California

1    administrative concerns, such as a corporate holding company, would be production.  This would

2    defeat the purpose of the administrative exemption."  *Id.*

3          The Court does not find the dichotomy useful in this case; instead, the Court focuses on

4    whether Rincon "perform[ed] work directly related to assisting with the running or servicing" of

5    AFSCME's business.  The undisputed facts sufficiently establish that she did such work.  It is

6    neither Rincon's position as one of many Organizers working in the field, nor the job title itself, but

7    the nature of her day-to-day activities that is determinative.  *Miller v. Farmers' Ins. Exch.*, 481 F.3d

8    1119, 1125 (9th Cir. 2007) (holding that insurance adjusters were exempt administrative employees,

9    despite the fact that they comprised approximately fifty percent of their employer's workforce and

10   did not supervise other employees); *see also* 29 C.F.R. § 541.2 ("A job title alone is insufficient to

11   establish the exempt status of an employee."); *Robinson-Smith*, 323 F. Supp. 2d at 19 ("Because the

12   title of a job is not dispositive, it is necessary to go through the analysis provided in the Code of

13   Federal Regulations.").

14         As the Department of Labor has explained, work related to "servicing" the business includes

15   "advising the management, planning, negotiating, representing the company, purchasing, promoting

16   sales, and business research and control."  Final Rule Defining and Delimiting the Exemptions for

17   Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg.

18   22122, 22138 (Apr. 23, 2004), available at 2004 WL 865626.  Here, Rincon's primary duty as an

19   Organizer was to represent and promote AFSCME.  Rincon's activities focused on increasing

20   AFSCME's membership and, through that, its bargaining strength.  Borton Decl. Ex. A.  As an

21   Organizer, Rincon was sent out into the community to speak with employees about AFSCME.

22   JSUF ¶ 8.  Rincon visited workers at their homes and on job sites, and these visits were often made

23   without any supervisor accompanying her.  *Id.* ¶ 9.  As part of the position, Rincon states that

24   assessing worker interest "was very much a part of what [she] did" to "see if they were interested in

25   helping to build their Union."  Rincon Depo. at 80:13-14, 83:8-9.  She also helped develop worker

26   leader committees.  *Id.* at 83:17-20.  In short, Rincon was the face of AFSCME for numerous

27   members and unorganized workers.  *See Savage*, 2008 WL 1790402, at *8 (union organizer played

28

31

1  supporting role to the union's primary function - representing dues-paying members - through duties

2  including increasing the unions membership, recruiting members by helping to organize unorganized

3  workers, and representing the union and its goals to the community and customers); *see also United*

4  *Food and Commercial Workers Union, Local 1036 v. N.L.R.B.*, 307 F.3d 760 (9th Cir. 2002) (union

5  bargaining strength significantly weakened by presence of non-unionized employees in an industry).

6        Thus, as a representative of AFSCME who promoted her employer and increased its

7  membership base, the Court finds that Rincon's duties related to the running and servicing of

8  AFSCME's business. *See, e.g., Savage*, 2008 WL 1790402, at *8 (plaintiff's duties as union

9  organizer promoted her employer and increased its membership base, and therefore related to the

10  running and servicing of union's business); *Roe-Midgett*, 512 F.3d at 871 (claims adjusters who

11  were on the "front lines" of employer's auto claims adjusting operation, spent most of their time in

12  the field and represent the "face" of their employer to claimants and mechanics were exempt

13  administrative employees); *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 10-11 (1st Cir. 1997)

14  (marketing representatives whose day-to-day activities were in the nature of "representing the

15  company" and "promoting sales" of employer's products, were engaged primarily in administrative

16  work).

17        3.      Discretion and Independent Judgment with Respect to Matters of Significance

18        "In general, the exercise of discretion and independent judgment involves the comparison

19  and the evaluation of possible courses of conduct, and acting or making a decision after the various

20  possibilities have been considered." 29 C.F.R. § 541.202(a). The determination of whether an

21  employee exercises discretion and independent judgment is based on an evaluation of the totality of

22  the facts involved in the particular employment situation. 29 C.F.R. § 541.202(b). "In general, the

23  exercise of discretion and independent judgment involves the comparison and the evaluation of

24  possible courses of conduct, and acting or making a decision after the various possibilities have been

25  considered." 29 C.F.R. § 541.202(a).

26        As an Organizer, Rincon was sent out into the community to represent AFSCME to

27  potential union members in order to educate them about the benefits of AFSCME-representation,

28

and to identify and develop potential organizing leaders among the target workforce. JSUF ¶¶ 8, 9; Borton Decl., Ex. A. In order to do so, AFSCME argues that Rincon had to use her own judgment and discretion to decide how best to approach workers, when to push a worker and when to retreat, how to respond persuasively and diplomatically to worker questions and concerns, and whether a worker showed indications of being a potential leader. DeJesus Decl. ¶¶ 4-5; Wilson Decl. ¶¶ 3-4; Klinglesmith Decl. ¶¶ 4, 6-7. AFSCME further argues that Rincon typically did so without any supervisor to oversee her interactions with these workers. DeJesus Decl. ¶¶ 4-5; Wilson Decl. ¶ 3; Klinglesmith Decl. ¶¶ 4, 7. As one supervisor testified, "It is up to the individual organizer to decide which workers to approach. Once the organizer decides to approach a worker, AFSCME depends on the judgment of its organizers in how to best reach a particular worker, how to explain our goals, how to best get that worker involved, and what next steps to suggest to each worker." Sukal Decl. ¶ 7.

In response, Rincon argues that she exercised little if any judgment or discretion. Opp. at 21. Rincon states that AFSCME instructs Organizers with the "Message" that they are to convey and that the "rap" to workers to relay this message was a script provided by AFSCME. *Id.* at 2. Rincon also states that the scale of 1 to 5 that Organizers used to determine where workers fell within the ranking system amounted to little more than a checklist of easily discernible factors: "sign a card and you're a 1 or a 2; don't sign a card and you're a 3; betray anti-union sentiment and you're a 4; belong to another union and you're a 5." *Id.* at 21.

As discussed above, it is undisputed that Rincon visited workers at their homes and on job sites, and these visits were often made without any supervisor accompanying her. *Id.* ¶ 9. Rincon herself acknowledged that "assessing [worker] interest [in the union] was very much a part of what [she] did" and she "absolutely" was "expected to develop worker leader committees," including identifying likely leaders among the workers, and that it was "common" for her to be the only organizer to attend a "house meeting" of potential union leaders in order "to figure out what [the union] could move [and] what was needed in that specific location." Mot., Ex. 2 (Rincon Depo.) at 83-92. After such meetings, it was her responsibility to advise the AFSCME organizing leads

33

UNITED STATES DISTRICT COURT
For the Northern District of California

1  regarding potential leaders within the workforce, and potential opportunities or difficulties in the

2  organizing drive, in order to move the organizing effort forward.  *Id.* at 84:9-12; DeJesus Decl. at ¶

3  5; Wilson Decl. ¶ 3; Klinglesmith Decl. ¶ 6.  When asked how she would determine who would be a

4  good leader, Rincon answered, "[d]efining a leader is more than whether or not someone is

5  interested in the Union. . . .   It's somebody that other people . . . have already developed a

6  connection with. . . .   You talk a lot . . . with them, with other workers. . . ."  Carter Decl., Ex. C

7  (Rincon Depo.) at 84:20-85:16.  Rincon further elaborated as follows:

8        It's hard to determine if somebody is a leader the first time you meet with them . . .
         you need to have more . . . have they been doing something in their community that,
9        you know, other people would listen to . . . Or . . you give them a task . . and then
         seeing did they do that? Did they follow through? . . . It[ ] takes a while to really see
10       what they do to be able to say 'yeah, this person could be a leader. . . .' [I]t's a
         learning process.

11

12  *Id.* at 101:4-17.  Rincon herself testified that she was responsible for assessing worker interest and

13  "figur[ing] out what [the union] could move [and] what was needed in [a] specific location."  *Id.* at

14  91:24-25.  These types of tasks satisfy the discretion and independent judgment standard.  *Savage*,

15  2008 WL 1790402, at *9-10 (concluding that union organizer was an exempt employee where the

16  plaintiff "identified individuals who might be able to take leadership roles in the campaign and

17  tested and cultivated their leadership ability," recognizing that "successful organizing requires the

18  ability to think on one's feet; a worker who closes a door on an organizer may not open it again");

19  *Reich*, 126 F.3d at 13 (marketing representatives who had discretion in choosing which agents to

20  contact and what products to discuss with each agent exercised discretion and independent

21  judgment).

22        Regarding the scale of 1 to 5 provided by AFSCME, Rincon herself stated that she used her

23  experience to determine where workers fell within this ranking system.  *Id.* at 84:6-23.  Rincon

24  would "listen to what [workers] say" and then "by virtue of what their responses are that you know

25  by your experience of where they fall and people get moved from ratings, you know?  They could

26  start out being anti, and then find out something from somebody else and, you know, move to

27  another rating, or vice versa."  *Id.* at 83:17-84:5, 102:3-21.

28

34

1    Further, even if Rincon's exercise of independent judgment took the form of

2 recommendations rather than direct action, such as recommending a team leader rather than

3 designating a person as such, *see* Rincon Depo. at 86:9-13, this does not diminish her exercise of

4 discretion and judgment.  "[D]ecisions made as a result of the exercise of discretion and independent

5 judgment may consist of recommendations for action rather than the actual taking of action."  29

6 C.F.R. § 541.202(b).  Neither does the fact that Rincon's decisions or recommendations may have

7 required supervisor approval to render her actions non-discretionary.  29 C.F.R. § 541.202(c)

8 ("[T]he term 'discretion and independent judgment' does not require that the decisions made by an

9 employee have a finality that goes with unlimited authority and a complete absence of review.").

10 "The fact that a chosen action might be overruled by a supervisor says nothing about the discretion

11 and judgment that went into its selection in the first place."  *Kennedy v. Commonwealth Edison Co.*,

12 410 F.3d 365 (7th Cir. 2005).

13    Rincon points out that she was "given a script" to use when speaking with workers.  Opp. at

14 2.  However, in her deposition, Rincon testified that beyond the script, her job as Organizer was to

15 have a "conversation" with workers, stating that she "was talking to [workers] about [the union],

16 why AFSCME was a good union."  Rincon Depo. at 103:21; 106:20-21.  She explained further:

17 "Being a good organizer is not talking.  Being a good organizer is listening," Rincon Depo. at

18 104:1-2, as she was "find[ing] out what the climate is [at the workplace]," Rincon Depo. at 120:4,

19 and "trying to figure out . . . is this a good target or not," Rincon Depo. at 83:4-5.  Thus, even if

20 AFSCME provided a script, Rincon's own testimony establishes that she went beyond this script in

21 her work.  *See Copas v. East Bay Mun. Util. Dist.*, 61 F. Supp. 2d 1017, 1033 (N.D. Cal. 1999)

22 (finding that employee who "go[es] out and get[s] information from the public . . . and . . . bring[s]

23 that information back to the District, and . . . bring[s] information, if any, that the District wants

24 distributed . . . out to the community" utilizes "precisely the sort of discretion and judgment"

25 required for the administrative exemption, because he "exercised discretion when fielding questions

26 from individuals at public meetings and from community groups and political entities such as city

27 councils," and was required to "respond diplomatically to all questions [and] not provide a

28

UNITED STATES DISTRICT COURT
For the Northern District of California

substantive response to any inquiry if that response might prove politically embarrassing to the District or if he had not been authorized to speak . . . on that subject.").

The undisputed facts, viewed in the light most favorable to Rincon, also establish that the discretion and independent judgment that she exercised related to matters of significance.  "The term 'matters of significance' refers to the level of importance or consequence of the work performed."  29 C.F.R. § 541.202(b).  Here, the consequence of Rincon's ability to perform her work successfully - organizing unrepresented workers and persuading those workers to choose AFSCME - could hardly be more significant to her employer.  Rincon's actions, when successful, increased AFSCME's entire membership base and strengthened its bargaining power.  *Savage*, 2008 WL 1790402, at *10 ("The benefits of Rincon's success in performing her work far surpass a mere financial impact on Defendant's bottom line; they enable Defendant to better achieve its stated mission of improving employment conditions for union members and for all workers.")

　　　　4.　　Summary

Based on this analysis, the Court finds that there is no genuine issue of material fact that Rincon was properly classified as an exempt employee under the FLSA.  And, as Rincon was properly classified as an exempt employee, AFSCME is entitled to judgment as a matter of law as to her overtime claims.  Accordingly, AFSCME's Motion as to Rincon's Eleventh Cause of Action is GRANTED.

**CONCLUSION**

For the foregoing reasons, AFSCME's Motion for Summary Judgment is GRANTED.  The Clerk of Court shall enter judgment in AFSCME's favor.

**IT IS SO ORDERED.**

Dated: August 13, 2013

_____
Maria-Elena James
United States Magistrate Judge

UNITED STATES DISTRICT COURT
For the Northern District of California